THE KURLAND GROUP
Yetta G. Kurland (YK – 1251)
350 Broadway, Suite 701
New York, New York 10013
Telephone:  (212) 253-6911
Facsimile:   (212) 614-2532

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In Re:

INDHIRA G. RAMIREZ

Case No. 12-12467-smb
Chapter 7

HON. STUART M. BERNSTEIN

Debtors.
-----------------------------------------------------------X

## OPPOSITION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY

**Background**

  Debtor Indhira G. Ramirez (hereinafter "Ramirez") first came to our office in November 2005 alleging to be a victim of the sub-prime mortgage scandal.  Our office agreed to represent Ramirez and in the first action, <u>Indhira Ramirez v. Joseph James, et al</u>, Index No. 4672/06, Ramirez was awarded the right to liquidate the property located at 11 Rainbow Court, Middle Island, NY 11953, and damages in the amount of $126,300.00, which constitutes damages for unpaid rent in the amount of $50,460.00 plus costs in the amount of $700.00, disbursements in the amount of $500.00 and legal fees in the amount of $74,640.00 plus statutory interest, to be paid from the proceeds of the sale of the property (*See* **Exhibit A**, Order of Justice Ralph F. Costello, dated September 16, 2006).  Thereafter we learned that an additional proceeding had been initiated to recover losses from a short sale in this matter entitled <u>First Mutual of New York v. McCloud, et al</u>.  This matter was resolved and Plaintiff withdrew its action against Ramirez.

1

Simultaneous to this, we learned that a foreclosure action had been initiated against Ramirez by JP Morgan Chase, (hereinafter "Chase") on or about January 17, 2006 in the Supreme Court of the State of New York, Suffolk County (<u>JP Morgan Chase v. Ramirez, et al</u>, Index No. 1777/2006, hereinafter the "Chase Foreclosure Action") alleging that Chase had a valid mortgage on the property and that Ramirez had defaulted on her obligation to make the loan payment as of September 1, 2005.  (*See* **Exhibit B**, Order of Justice Paul J. Baisley, Jr., dated February 18, 2011).  Ramirez served and filed an Answer and Counterclaims, dated February 13, 2006 (*see* **Exhibit C**) alleging that Chase did not have a valid mortgage for reasons including but not limited to the fact that Ramirez was not properly represented by counsel when she executed the mortgage, necessary documents were missing and/or potentially forged and Ramirez did not have title to the property when the mortgage and note were purportedly signed.  Ramirez also has counterclaims for a declaratory judgment as to the mortgage's invalidity, as well as damages for multiple violations of banking laws, including but not limited to punitive damages and attorneys' fees (now in excess of $550,000.00) as well as out of pocket costs.

The last appearance by Chase in the Chase Foreclosure Action was on June 26, 2007, after which National Bank of Nevada (hereinafter "FNBN") attempted to substitute as Plaintiff. Ramirez opposed this motion claiming that FNBN lacked standing, and that the owner of the Note and Mortgage prior to Chase's ownership, FNBA, maintained ownership and control over the mortgage despite its alleged assignment to Chase.  The Court denied FNBN's motion stating that there was no evidence that Chase had ownership of the Note at the time it assigned its rights and determined that the assignment to Chase appeared invalid.  A true copy of Justice Mayer's decision and order is annexed hereto as **Exhibit D**, and incorporated and made part of this

2

opposition. In this detailed decision and order, Justice Mayer made clear that the Plaintiff remained Chase, that there were no "successors in interest" and that all the motions, cross-motions, and other papers filed and served in the Chase Foreclosure Action, attempting or purporting to substitute consecutive parties including FNBN as Plaintiff were dismissed. *See* **Exhibit C**, Decision of Justice Peter H. Mayer, June 25, 2009. Justice Mayer further made clear that even Chase's ownership and authority to foreclose was questionable as the Court found "triable issues as to Chase's ownership of the note at the time of commencement of the action [which] preclude[d] the substitution of FNBN as plaintiff in the action" (See **Exhibit D, ¶ 3**). Chase could not establish that it had possession and title to the alleged note and mortgage on December 16, 2005, the date the Chase Foreclosure Action was commenced. . See **Exhibit D**.

FNBN's attorney, Gary Fellner, Esq., "changed hats" numerous times in the Chase Foreclosure Action, appearing on behalf of countless entities ranging from predatory lenders, Single Purpose Entities and even the Federal Deposit Insurance Corporation ("FDIC"), each time claiming they were "successors in interest" to Plaintiff Chase. In August 2007, Mr. Fellner appeared on behalf of FNBN claiming they had a right to substitute in this action because they were "successors in interest." In July 2008 he reappeared claiming to represent the FDIC in this action who had shut down FNBN for its predatory lending practices, asserting that they now were the "successors in interest" to Plaintiff. Then nine months later, in May 2009, Mr. Fellner appeared again this time as counsel to another company, FNBN 1, LLC, a newly minted shell corporation created for the sole purpose to act as the "successors in interest" to none other than the Plaintiff in the Chase Foreclosure Action. True copies of letters authored by Mr. Fellner claiming to represent these various "successors in interest" are annexed hereto as **Exhibit E.**

3

Each time, Mr. Fellner claimed these various entities were "successors in interest" to Plaintiff, and had standing to proceed in the foreclosure action. The reality, however, is that neither Mr. Fellner nor his numerous clients, all claiming to be "successors in interest" to Chase, ever had the right to foreclose on the subject premises.

As Chase had abandoned the action and had no valid successors in interest, Ramirez served Chase on March 26, 2010 pursuant to CPLR §3216 with a demand to resume prosecution or face a motion to dismiss for want of prosecution. When Chase failed to respond after giving advance notice to the Court, and sufficient time having elapsed, Ramirez filed a Motion to Dismiss the Complaint for Want of Prosecution pursuant to CPLR §3216. In response, FNBN 1, LLC filed yet another motion to substitute as Plaintiff in the Chase Foreclosure Action. At this point, the law of the case was clear and unequivocal as stated by Justice Mayer, in his decision and order dated June 25, 2009 denying the prior attempt of Gary Fellner, Esq., acting on behalf of FNBN to seek the exact same relief – namely to substitute as a party in interest into the foreclosure action on behalf of Plaintiff. In doing so, the Court determined:

> " . . . evidence tracking ownership of the note prior to the December 25, 2009 assignment by MERS as nominee for First National Bank of Nevada (Hereinafter, FNBN") . . .[and] [t]he Court is therefore unable to ascertain whether FNBN retained ownership and the allonge, or if the note has been transferred or endorsed to [First National Bank of Arizona, (hereinafter, "FNBA")] FNBA or Residential Funding Corporation ("RFC") at the time of the assignment to Chase (*see UCC 3-104; Slutsky v Blooming Grove Inn*, 147 AD2d 208, 524 NYS2d 721 (2d Dept 1989). If neither RFC not MERS as nominee for FNBA owned the note, as it appears, they would have lacked the authority to assign the note to Chase (*see Klug v. Fugazy,* 145 AD2d 537, 536 NYS2d 92 (1988); *LaSalle Bank Natl. Assn. v. Lanny,* 12 Misc 3d 1191 (a), 824 NYS2d 769 (2005). The existence of triable issues as to Chase's ownership of the note at the time of commencement of the action precludes the substitution of FNBN as plaintiff in the action (*see Reynolds v. Blue Cross,* 210 AD2d 619, 620 NYS2d 164 (3rd Dept 1994); *Matter of C& M Plastics,* 168 AD2d 160, 571 NYS2d 343 (3rd Dept 1991).

4

*See* **Exhibit D,** Justice Mayer's decision and order, ¶ 3). By bringing the exact same motion brought by FNBN under a new entity, FNBN 1, LLC, a shell company created for the sole purpose of defrauding Ramirez and the Court by absconding with assets and laying claim to a foreclosure action where no legal claim exists, FNBN 1 attempted to wash the mortgage and note through future entities but this did nothing to remedy past problems with chain of title, nor the past determination of the Court. FNBN 1 did not have standing to substitute as Plaintiff in the Chase Foreclosure Action because Chase, and therefore FNBN, had no right to assign those interests to future parties in the first place, as the Court determined.

Furthermore, in a last ditch attempt to secure interests that do not exist, FNBN 1 attempted to evoke the name of the Federal Deposit Insurance Company (hereinafter "FDIC") to engender some credibility to its claim that it had a right to proceed. However, when Justice Mayer issued his decision and order in June of 2009, the Court was already aware that almost a year earlier, the Office of the Controller of the Currency shut down FNBN for its predatory lending practices and appointed the FDIC as "receiver" for FNBN. But receivership only applies to assets which the FDIC is entitled to receive, and while the FDIC may have had a claim against FNBN for failing to disclose that it had not acquired an interest in the action, that does not mean that such efforts overturn Justice Mayer's ruling.

Moreover, the FDIC never sought substitution, never sought removal, never did anything but attempt tp assign whatever it had to FNBN 1, LLC, an off-balance-sheet, single purpose entity. FNBN 1 appeared to be attempting to use the FDIC as both 'smoke' and 'mirrors' to convince the Court to let them convert assets through the foreclosure action. The Court rejected

5

these efforts almost a year after the FDIC was made receiver of FNBN's assets, holding there are no successors in interest with a valid interest in the note, mortgage and allonge (*See* **Exhibit D, Justice Mayer Decision.**). FNBN 1, LLC was, and continues to be, nothing more that a single purpose entity created solely to dispossess Ramirez and others similarly situated.

In an Order dated February 18, 2011, Justice Paul J. Baisley, Jr. granted Ramirez' motion to dismiss the foreclosure action against her and Justice Baisley denied FNBN 1's motion to substitute as Plaintiff.  A true copy of Justice Baisley's decision and order is annexed hereto as **Exhibit B**, and incorporated and made part of this opposition.  In the same February 18, 2011 Order, Justice Baisley severed and continued Ramirez's counterclaims against Chase (*See* **Exhibit B**).  Despite FNBN 1's motion for leave to reargue Ramirez' motion to dismiss and FNBN 1's motion to substitute as Plaintiff, Justice Baisley confirmed the Court's decision by Order dated September 16, 2011 (*See* **Exhibit F**) and this firm will seek permission from this Court to continue to pursue the counterclaims that were brought by Ramirez in this action for a declaratory judgment as to the mortgage's invalidity, as well as damages for multiple violations of banking laws, including but not limited to punitive damages and attorneys' fees (now in excess of $550,000.00) as well as out of pocket costs.

## **Argument**

An entity seeking to foreclose on a mortgage must be in proper possession of the subject mortgage and the underlying note. In re Idicula, 484 B.R. 284, 288 (Bankr. S.D.N.Y. 2013) *citing* Bank of N.Y. v. Silverberg, 926 N.Y.S.2d 532, 536 (2d Dept. 2011). FNBN 1 has failed to show proper assignments of the underlying note, and therefore lacks standing to foreclose on the subject mortgage which is governed by state law. 484 B.R. at 287-88 *citing* Butner v. United

States, 440 U.S. 48, 54 (1979). Because it lacks standing under New York law, FNBN 1 is not a "party in interest" for the purpose of bringing a motion for relief from the stay. 11 U.S.C. § 362(d)(1). In the Second Circuit, a "party in interest" must be either a creditor or a debtor in order to lift the stay. Idicula, 484 B.R. at 287 *citing* In re Comcoach, 698 F.2d 571, 573 (2d Cir.1983). A "creditor" must show that it held a claim against the debtor at the time of or before "the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). And while a "claim" is defined broadly as a "right to payment" (Id. § 101(5)(A)), FNBN-1 has failed to establish such a right, and therefore cannot be considered a creditor.

In Idicula, the movant-bank failed to establish a "right to payment," and therefore lacked the ability to seek the state law remedy of foreclosure, because it failed to show that it held the underlying note as well as the subject mortgage. 484 B.R. at 287 *citing* In re Mims, 438 B.R. 52, 56 (Bankr. S.D.N.Y. 2010) (denying the movant-bank's motion where it failed to establish ownership of the note and mortgage). *See also* In re Lippold, 457 B.R. 293 (Bankr. S.D.N.Y. 2011) (same result). As Justice Mayer stated in the June 25, 2009 Decision, there were triable issues as to Chase's ownership of the note which rendered subsequent transfers invalid (*See* **Exhibit C,** ¶ 3), and "a Plaintiff has no foundation in law or in fact to foreclose upon a mortgage, unless the Plaintiff has shown it has legal or equitable interest in such mortgage." *See,* IndyMac Bank F.S.B v. Garcia*, _ Misc.3d_; 2010 NY Misc. LEXIS 2795; 2010 NY Slip Op 51127U, *citing* Wells Fargo Bank, N.A. v. Marchione*, 69 AD3d 204, 887 NYS2d 615 (2d Dep't 2009); Katz v. East-Ville Realty Co, 249 AD2d 243, 627 NYS2d 308 (1st Dep't 1998).

FNBN 1 now continues to claim without proper proof of authority or documentary evidence that would establish the grounds that " . . .[t]he loan was assigned from MERS as

7

nominee for First National Bank of Arizona to JP Morgan Chase Bank f/k/a JPMorgan Chase Bank. . .[, then] assigned from JP Morgan Chase Bank f/k/a JP Morgan Chase Bank to First National Bank of  Nevada . . .[, and then] assigned from The Federal Deposit Insurance Corporation as receiver for First National Bank of Nevada to FNBN."

There is no evidence of a proper transfer from MERS as agent for recording the mortgage, and no evidence of the proper transfer of the note secured by such mortgage (*See* **Exhibit D**, Order of Justice Mayer, ¶¶ 3-5).  FNBN 1 tries to remedy this deficiency by asserting facts that have never been in evidence, namely the proper delivery of the mortgage and the note by an authorized party.  It is well settled that a "mortgage is merely security for a debt or other obligation and cannot exist independently of the debt of obligation (*see* FGB Reality Advisors, Inc. v Parisi, 265 A.D.2d 297, 696 NYS2d 207 (1999)).  Any purported assignment of a note or mortgage by an entity having no ownership interest therein passes no title to the assignee (*see* LaSalle Bank Natl. Assn. v. Lamy, 12 Misc 3d 1191 (a), 824 NYS2d 769 (2006)); *see also* Matter of Stralem, 303 AD2d 120, 758 NYS2d 345 (2003)).  Thus, a plaintiff seeking a foreclosure must establish that it was the owner or holder of the note and mortgage at the time that it commenced the foreclosure action (*see* Mortgage Elec. Registration Sys., Inc. v. Coakley, 41 AD3d 674, 838 NYS2d 622 (2007); Federal Natl. Mtge. Assn. v. Youkelsone, 303 AD2d 546, 755 NYS2d 730 (2003)), or that it was the assignee of the mortgage and note at the time that the action was commenced (*see* Federal natl. Mtge. Assn. v. Youkelsone, *supra*; First Trust Natl. Assn v. Meisels, 234 AD2d 414, 651 NYS2d 121 (1996); Slutsky v. Blooming Grove Inn, 147 AD2d 208, 542 NYS2d 721 (1989))" (**Exhibit D**, Order of Justice Mayer, ¶5).  Furthermore, a statement merely indicating that the original note is in Plaintiff's possession is insufficient to

8

show that Plaintiff had standing to bring the foreclosure action.  *See,* IndyMac Bank F.S.B v. Garcia, _ Misc.3d_ ; 2010 NY Misc. LEXIS 2795; 2010 NY Slip Op 51127U, *citing* Countrywide Home Loans, Inc. v. Gress, 68 AD3d 709, 888 NYS2d 914(2d Dept 2009); Wells Fargo Bank, N.A. v. Marchione,  69 AD3d 204, 887 NYS2d 615 (2d Dep. 2009).  To permit FNBN 1 to evade the numerous Court orders relating to this property would undo the law of the case and continue the predatory acts of these various entities and further make a mockery of the judicial system.

In addition to the deficiencies noted above, the mortgage in issue here is not a valid mortgage for many reasons including but not limited to the fact that Ramirez was not properly represented by counsel when she executed the mortgage, necessary documents were missing and/or potentially forged and Ramirez did not have title to the property when the mortgage and note were purportedly signed.  As such, Ramirez has counterclaims for a declaratory judgment as to the mortgage's invalidity, as well as damages for multiple violations of banking laws, including but not limited to punitive damages and attorneys' fees (now in excess of $550,000.00) as well as out of pocket costs.

Lastly, as FNBN 1 states in its Memorandum of Law, FNBN 1 has "the burden of proof on the issue of debtor's equity," and FNBN 1 has failed to meet this burden.  FNBN 1 merely states that "whatever equity might exist will decrease," but conclusory allegations such as this, with no personal knowledge of the facts, are wholly insufficient and FNBN 1's Motion for Relief from the Automatic Stay must be denied.

**WHEREFORE**, The Kurland Group respectfully request that FNBN 1, LLC's Motion for Relief from the Automatic Stay be denied, and any and all further relief that this Court may find just and proper.

Dated:    New York, New York
         March 25, 2013

                                    /s
                            Yetta G. Kurland (YK-1251)
                            THE KURLAND GROUP
                            350 Broadway, Suite 701
                            New York, New York 10013
                            Telephone:  (212) 253-6911
                            Facsimile:   (212) 614-2532