```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In re:                                                    :
                                                          :    Chapter 7
INDHIRA G RAMIREZ                                         :
                                                          :    Case No. 12-12467 (SMB)
                                      Debtor.             :
----------------------------------------------------------X
```

## MEMORANDUM DECISION AND ORDER
## DENYING APPLICATION FOR RETURN OF AUCTION DEPOSIT

**A P P E A R A N C E S:**

LAMONICA HERBST & MANISCALCO, LLP
*Attorneys for Chapter 7 Trustee*
3305 Jerusalem Avenue
Wantagh, New York 11973

    Gary F. Herbst, Esq.
    Jordan Pilevsky, Esq.
        Of C0unsel

FELICIA ADEBISI
*Pro Se*
20 Fife Drive
Coram, New York 11727

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

      Felicia Adebisi ("Adebisi") was the successful bidder at a bankruptcy auction but failed to close. She seeks the return of $33,000 that she tendered to the chapter 7 trustee (the "Trustee") as a Deposit and Buyer's Premium (each as defined below). The Trustee opposes this relief and argues that there is no basis to return these funds. For the reasons that follow, the Court finds that Adebisi is not entitled to the return of the Deposit and Buyer's Premium, and accordingly, denies her request to order the Trustee to return them.

## BACKGROUND

On August 15, 2016, this Court authorized the Trustee to conduct an auction sale (the "Auction Sale") of certain real property located at 11 Rainbow Court, Middle Island, New York 11953 (the "Real Property") and approved the bidding procedures (the "Bidding Procedures") that governed the Auction Sale.[1] (*See Order Authorizing and Approving: (I) an Auction Sale of the Real Property Located at 11 Rainbow Court, Middle Island, New York 11953, Designated District 0200, Section 378.00, Block 03.00, Lot 48.006, Free and Clear of All Liens, Claims and Encumbrances, with Such Liens, Claims and Encumbrances to Attach to the Proceeds of Sale; and (II) the Bidding Procedures for the Real Property*, dated Aug. 15, 2016 (the "*Bidding Procedures Order*"), at 2-3 (ECF Doc. # 73).)[2] Among other things, the Bidding Procedures required all bidders to tender a qualifying deposit of $20,000 (the "Qualifying Deposit") prior to the Auction Sale as a partial good faith deposit against payment of the purchase price. (Bidding Procedures, *Bidding Procedures Order*, Ex. A at ¶ 4.) If the bidder became the "Successful Bidder," she was required to deliver a down payment of at least 10% of the successful bid price minus the $20,000 qualifying deposit (the "Additional Deposit," and together with the Qualifying Deposit, the "Deposit") and

---

[1] The Auction Sale was the second Court-authorized auction of the Real Property. The first auction was held on February 11, 2016 and the Court entered an order confirming the sale to the successful bidder on February 18, 2015. (*Order Confirming the Chapter 7 Trustee's Public Sale of Real Property*, dated Feb. 15, 2015 (ECF Doc. # 69).) The highest bidder at that auction tendered a deposit and buyer's premium to the Trustee in the aggregate amount of $38,250. (*See Affirmation in Support of Proposed Order Confirming the Chapter 7 Trustee's Public Sale of the Debtor's Real Property*, dated Feb. 17, 2015, at ¶¶ 4-5. (ECF Doc. # 68).) The sale failed to close, and the Trustee subsequently sought to sell the Real Property at the Auction Sale. The record is unclear as to whether the Trustee retained or returned the deposit and/or buyer's premium it received in connection with the first auction sale.

[2] "ECF Doc. # __" refers to documents filed on this case's docket.

2

a 5% buyer's premium (the "Buyer's Premium") within 48 hours of the Auction Sale.[3] (*Id.* at ¶ 5.) The Successful Bidder was required to close title to the Real Property within thirty days of the entry of an order approving the sale. (*Id.*)

The Bidding Procedures included a conspicuous warning alerting the Successful Bidder of the consequences should she fail to close:

> There is no contingency of any kind or nature that will permit the Successful Bidder to withdraw its bid and receive a return of its deposit. In connection with the Closing and the Closing Date, the Successful Bidder is hereby given notice, and expressly acknowledges that, **TIME IS OF THE ESSENCE WITH RESPECT TO THE SUCCESSFUL BIDDER'S OBLIGATION TO PAY THE DOWN PAYMENT AND THE BUYER'S PREMIUM WITHIN 48 HOURS OF THE AUCTION SALE AND TO PAY THE BALANCE OF THE PURCHASE PRICE ON THE CLOSING DATE. FAILURE BY THE SUCCESFUL BIDDER TO PAY THE BALANCE OF THE PURCHASE PRICE ON THE CLOSING DATE WILL RESULT IN THE TRUSTEE RETAINING THE QUALIFYING DEPOSIT/DOWN PAYMENT AND BUYER'S PREMIUM AS LIQUIDATED DAMAGES AND THE TERMINATION OF THE SUCCESSFUL BIDDER'S RIGHT TO ACQUIRE THE REAL PROPERTY UNDER THESE BIDDING PROCEDURES.**

(*Id.* at ¶ 8 (bold face, underlining and capitalization in original).) Thus, if the Successful Bidder failed to close for any reason (other than the Trustee's inability to convey title) by the closing date, she forfeited her Deposit and Buyer's Premium.

The Bidding Procedures also stated that the Trustee and Trustee's professionals had not made and did not make any representations as to, among other things, the physical condition of, or the availability of any financing with respect to, the Real Property, (*id.* at ¶ 12), and that the Real Property was being sold

---

[3] The Buyer's Premium essentially shifts the obligation to pay a broker's commission from the seller (the Trustee) to the Successful Bidder.

3

**'AS IS', 'WHERE IS' IN ITS CURRENT CONDITION, WITHOUT ANY REPRESENTATIONS, COVENANTS, GUARANTEES OR WARRANTIES OF ANY KIND OR NATURE WHATSOEVER.**

(*Id.* at ¶ 13 (bold face and capitalization in original.).)

Finally, the bidders acknowledged that by delivering a Qualifying Deposit, they "had the opportunity to review and inspect the Real Property . . . and will rely solely on their own independent investigation and inspection of the Real Property in making their bid. (*Id.* at ¶ 14.)

The Auction Sale took place on September 28, 2016. (*Order Confirming the Sale of the Debtor's Real Property Located at 11 Rainbow Court, Middle Island, New York 11953, Designated District 0200, Section 378.00, Block 03.00, Lot 48.006*, dated Oct. 4, 2016 (the "*October 2016 Sale Order*"), at 1 (ECF Doc. # 79).) Seven qualified bidders registered to participate in the Auction Sale, all were provided with a copy of the Bidding Procedures and competitive bidding took place. (*Declaration in Support of the Entry of an Order Confirming the Sale of the Debtor's Real Property Located at 11 Rainbow Court, Middle Island, New York 11953, Designated District 0200, Section 378.00, Block 03.00, Lot 48.006*, dated Sept. 30, 2016, at ¶ 6 (ECF Doc. # 78-1).) Adebisi bid $220,000, was declared the Successful Bidder, (*October 2016 Sale Order* at 1), and she subsequently provided the Trustee with the required Additional Deposit and Buyer's Premium. In total, she delivered $33,000 to the Trustee. (*Chapter 7 Trustee's Response and Opposition to the Application in Support of Order to Show Cause Filed by Felicia Adebisi Seeking Entry of an Order Directing the Trustee to Return the Deposit Tendered in Connection with an Auction Sale of the Real Property Located at 11 Rainbow Court, Middle Island, New York 11953, Designated District 0200, Section*

*378.00, Block 03.00, Lot 48.006*, dated Jan. 25, 2017 (the "*Trustee's Response*"), at ¶ 14 (ECF Doc. # 84).) At the conclusion of the Auction Sale, Adebisi signed the bidding procedures, acknowledging that she had "read these Bidding Procedures and agree[d] to be bound by them," (*id.*, Ex. A, at 7 of 9), and executed a Memorandum of Sale, (*id.* at ¶ 13), pursuant to which she "promise[d] and agree[d] to comply with the bidding procedures of the sale of the Real Property" as set forth in the Bidding Procedures. (*Id.*, Ex. A, at 8 of 9.)

On October 4, 2016, the Court entered the *October 2016 Sale Order*, which, among other things, approved the sale of the Real Property to Adebisi. The *October 2016 Sale Order* expressly provided that the Trustee would be entitled to retain the Deposit and Buyer's Premium in the event Adebisi or her designee failed to close on the sale of the Real Property in accordance with the Bidding Procedures. (*October 2016 Sale Order* at 3.) As the *October 2016 Sale Order* was entered on October 4, 2016, the Trustee advised Adebisi's counsel that the deadline to close title under the Bidding Procedures was November 3, 2016. (*Trustee's Response* at ¶ 20 & Ex. C.)

Adebisi was unable to close by the deadline because she could not obtain financing. The Trustee extended the closing to accommodate her attempts to secure financing and ultimately set the closing for December 30, 2016. (*Id.* at ¶¶ 22-24.) However, one day before the scheduled closing, Adebisi's counsel advised the Trustee that his client could not obtain financing and would not be able to consummate the sale without more time. (*Id.* at ¶ 25 & Ex. H.) As a result, she did not appear at the closing.

5

On December 30, 2016, Adebisi, acting *pro se*, filed the *First Application*. She stated that she had not been able to secure financing to complete the sale because of the Real Property's condition, the Trustee had promised to fully cooperate and work with her in "processing [her] mortgage application" and the Trustee was unwilling to return the Deposit and Buyer's Premium. (*First Application* at 1.) The Trustee opposed the *First Application* believing Adebisi was seeking the return of the Deposit and Buyer's Premium. (*See Trustee's Response* at ¶ 17.) The *Trustee's Response* noted relevant provisions of the *October 2016 Sale Order* and *Bidding Procedures*, (*see id.* at ¶¶ 18-19), described several delays on Adebisi's part in closing the sale as well as corresponding accommodations granted by the Trustee, (*see id.* at ¶¶ 23-25), and noted that Adebisi failed to appear at a rescheduled closing on December 30, 2016 and thereby defaulted. (*Id.* at ¶¶ 26-27.)

The Court heard the *First Application* on February 7, 2017. (*Chapter 7 Trustee's Supplemental Response and Opposition to the Application in Support of Order to Show Cause Filed by Felicia Adebisi Seeking an Order Directing the Trustee to Return the Deposit Tendered in Connection with an Auction Sale of the Real Property Located at 11 Rainbow Court, Middle Island, New York 11953, Designated District 0200, Section 378.00, Block 03.00, Lot 48.006*, dated Mar. 23, 2017 (the "*Supplemental Response*"), at ¶ 2 (ECF Doc. # 98).) At the hearing, Adebisi expressed a continued desire to close on the Real Property and said that she had secured a commitment letter from a lender and a bank was processing her loan application. (*See id.*) The Trustee's counsel responded that the Trustee was willing to close the sale to Adebisi and would therefore agree to further extend the closing deadline, but his paramount interest was in ensuring that the

6

Real Property was sold, (*see id.*), and the Court granted the Trustee's application to approve bidding procedures and schedule a new auction sale (the "Third Auction"). (*See Amended Order Authorizing and Approving: (I) an Auction Sale of the Real Property Located at 11 Rainbow Court, Middle Island, New York 11953, Designated District 0200, Section 378.00, Block 03.00, Lot 48.006, Free and Clear of all Liens, Claims and Encumbrances, with Such Liens, Claims and Encumbrances to Attach to the Proceeds of Sale; and (II) the Bidding Procedures for the Real Property*, dated Feb. 8, 2017 (ECF Doc. # 90).) The Trustee nonetheless agreed to close the sale with Adebisi provided she was prepared to close before March 17, 2017, and the following day memorialized this understanding in a letter to Adebisi (the "*Extension Letter*"). (*Id.* at ¶¶ 2-3 and Ex. 2.)

Adebisi was unable to obtain financing prior to the date of the Third Auction. On March 17, 2017, Adebisi, again appearing *pro se*, filed a second *Application in Support of Order to Show Cause* (the "*Second Application*"). (ECF Doc. # 96.) The *Second Application* attached a letter to the Court stating that despite her best efforts, she had been unable to obtain financing to close the sale of the Real Property and expressly requested the return of the Deposit and Buyer's Premium. The *Second Application* also attached a letter from Adam Karhu, Esq. to the Trustee on behalf of Adebisi dated December 29, 2016 (the "Karhu Letter"). The Karhu Letter discussed Adebisi's difficulty obtaining financing and stated that had Adebisi consulted counsel prior to the Auction Sale, she "would have been well-advised to steer clear." The Karhu Letter also instructed the Trustee not to release the Deposit or Buyer's Premium pending a "resolution" of the situation.

On March 21, 2017, Adebisi filed a third *pro se Application in Support of Order to Show Cause* (the "*Third Application*"). (ECF Doc. # 97.) The *Third Application* attached the same documents as the *Second Application* and, in the main document, included a statement from Adebisi essentially reiterating the substance of the attached letters.

The Trustee filed a supplemental response which incorporated the *Trustee's Response* by reference. (*Supplemental Response* at ¶ 1.) The *Supplemental Response* also attached the *Extension Letter*, (*id.*, Ex. 2), and stated that Adebisi had subsequently asked for a further extension of the closing deadline, which apparently was not granted, and that Adebisi had therefore once again defaulted by failing to close the sale of the Real Property. (*Id.* at ¶¶ 5-6.) In light of this default, the Trustee moved forward with the Third Auction and, by a separate application, sought to confirm the sale to the successful bidder. (*Id.* at ¶ 6.)

The Court held a hearing on March 28, 2017 to consider Adebisi's *Second Application* and *Third Application* as well as the confirmation of the sale of the Real Property to the winning bidder at the Third Auction. At the hearing, Adebisi emphasized her efforts to secure financing and the hardship she would suffer absent the return of the Deposit and Buyer's Premium. However, when the Court asked whether the Trustee had failed to "work with" Adebisi in any way, she responded that she "would not say that." The Trustee reiterated that under the terms of the Court-approved Bidding Procedures, the sale of the Real Property to Adebisi was a no-contingency, as-is, where-is sale and that the Trustee had granted Adebisi numerous extensions of the closing deadline. Separately, the Court approved the sale of the Real Property to that

8

bidder at a price of $260,000, plus a buyer's premium of five percent of the purchase price.  (*Order Confirming the Sale of the Debtor's Real Property Located at 11 Rainbow Court, Middle Island, New York 11953, Designated District 0200, Section 378.00, Block 03.00, Lot 48.006*, dated Mar. 28, 2017, at 1-3 (ECF Doc. # 103).

## DISCUSSION

"Where the terms of sale expressly provide that the defaulting bidder forfeits his earnest money deposit, such a term is enforced.  Such terms are binding even if the buyer is unaware of them."  *In re Target Two Assocs., L.P.*, No. 04 Civ. 8657 (SAS), 2006 WL 3068668, at *6 (S.D.N.Y. Oct. 27, 2006), *aff'd* 282 Fed. App'x 914 (2d Cir. 2008) (footnotes and citations omitted).  The Bidding Procedures provided in clear and unambiguous terms that the Successful Bidder would be required to deliver the Deposit and Buyer's Premium to the Trustee, and forfeit the Deposit and Buyer's Premium if she failed to close in accordance with the terms set forth in the Bidding Procedures.  The Bidding Procedures also provided among other things in clear and unambiguous terms that the sale was on an as-is, where-is basis not subject to any contingencies, including financing contingencies, and no contingency would relieve the Successful Bidder of his or her obligation to close the sale of the Real Property.  Furthermore, the *October 2016 Sale Order* expressly provided that the Trustee would be entitled to retain the Deposit and Buyer's Premium in the event Adebisi or her designee failed to close on the sale of the Real Property in accordance with the Bidding Procedures.  It is undisputed that Adebisi failed to close in accordance with the *Bidding Procedures Order* and the *October 2016 Sale Order*, and accordingly, she forfeits the Deposit and Buyer's Premium.

Although not specifically argued, the question remains whether the Court can ameliorate the harshness of this result through the exercise of its equitable powers. While equitable considerations might allow a defaulting purchaser to recover a deposit in extraordinary cases, the application of these considerations is "limited to [cases involving] 'fundamental errors or compelling equities arising out of fraud, mistake or like infirmity.'" *Target Two*, 2006 WL 3068668, at *6 (quoting *Balaber-Strauss v. Markowitz (In re Frankel)*, 191 B.R. 564, 572 (Bankr. S.D.N.Y. 1995), *on reconsideration*, 208 B.R. 321 (Bankr. S.D.N.Y. 1995)). "[A] survey of the cases has not disclosed a single instance where a defaulting bidder successfully opposed forfeiture of his earnest money deposit, where the terms of sale specified that the deposit was unrecoverable." *Id.* (footnote and citations omitted).

Adebisi's situation, though unfortunate, does not permit the Court to ignore the parties' agreement based on equitable considerations. It is true that the Trustee has resold the Real Property at a higher price and the estate may not have been damaged as a result of Adebisi's default. Nevertheless, this is not a situation involving "fundamental errors or compelling equities arising out of fraud, mistake or like infirmity." The Bidding Procedures, which she acknowledged she had read, provided that there were no contingencies to closing, and she would lose her Deposit and Buyer's Premium if she did not close for any reason. She freely chose to become a bidder even though she lacked the necessary financing, presumably in the hope that she would get it. (*See Third Application* at 1 ("I went to the auction with good faith and high hope[s] to buy an affordable property for my family.").) She voluntarily undertook that risk, and the consequences to her, though harsh, are a product of her own making.

10

One last point. Adebisi has suggested that the Trustee promised to "work with" her, perhaps implying that he did not. However, the record reflects that the Trustee extended the closing date several times to give her the chance to secure the financing, and never asked for additional deposits in exchange for the extensions. Furthermore, Adebisi conceded on the record at the hearing held on March 28, 2017 that the Trustee had not gone back on his word.

Accordingly, Adebisi's request for an order directing the Trustee to return the Deposit and Buyer's Premium is denied.

So ordered.

Dated: New York, New York
       May 1, 2017

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge